# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| NATALIE MEREDITH, | ) |
| Plaintiff, | ) 3:13-cv-00277-RCJ-WGC |
| vs. | ) **ORDER** |
| DOUGLAS WEILBURG, | ) |
| Defendant. | ) |

This case arises out of an alleged violation of the federal Fair Housing Act. Pending before the Court is a Motion to Dismiss Counterclaims (ECF No. 9). For the reasons given herein, the Court grants the Motion in full, with leave to amend in part.

## I.    FACTS AND PROCEDURAL HISTORY

On May 28, 2013, Plaintiff Natalie Meredith ("Plaintiff" or "Meredith"), who has a hypersensitivity to mold, fungus, and other allergens, filed her complaint alleging that Defendant Douglas Weilburg ("Defendant" or "Weilburg") discriminated against her on the basis of disability in violation of the federal Fair Housing Act, when he refused to rent a single-family home at 521 G St. in Sparks, NV (the "House") to her. (Compl. ¶¶ 6–14, May 28, 2013, ECF No. 1). In August 2011, prior to the commencement of this action, Plaintiff filed an administrative compliant with the United States Department of Housing and Urban Development ("HUD"), alleging housing discrimination. After investigating the complaint, HUD made a reasonable cause determination and issued a charge of discrimination against Weilburg pursuant to 42 U.S.C. § 3610(g)(2)(A).  After Weilburg elected to have the charge resolved in federal court, the United States Attorney initiated an action against him in this Court pursuant to 42 U.S.C. § 3612(o)(1). This Court dismissed that action as untimely under 42 U.S.C. § 3612(o)(1). *United*

*States v. Weilburg*, No. 3:12-CV-00571-RCJ-WGC, 2013 WL 1110902 at *3 (D. Nev. Mar. 12, 2013). Subsequently, Plaintiff instituted the present action in her own name pursuant to 42 U.S.C. § 3613. (*See* Compl., ECF No. 1). Defendant answered and filed a counterclaim alleging fraud/ intentional misrepresentation, negligent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress, arising out of the same events forming the basis for Meredith's housing discrimination claim. (Countercl., June. 20, 2013, ECF No. 7, at14–20).

Specifically, Weilburg's pleadings allege the following: In March 2011, Meredith met with Weilburg, inspected the House, and expressed her desire to rent it. (*Id.* ¶¶ 1–4). Weilburg advised Meredith that the House was undergoing a renovation, but Meredith remained interested in renting it, and stated that she wished to monitor the progress. (Answer ¶ 7, June 20, 2013, ECF No. 7, at 3). During these discussions, Meredith falsely represented to Weilburg, in the presence of his wife, that her credit was immaculate and that she was in excellent physical condition. (Countercl. ¶ 5, ECF No. 7).  Meredith, however, was not in excellent physical condition; she allegedly suffered from severe allergies. (*Id.* ¶ 6). Moreover, she did not have immaculate credit. Instead, her credit report listed a bankruptcy, two (2) civil actions against her, and an outstanding warrant against her. (*Id.*). Further, Meredith knew that her statements were false and that Weilburg was unaware of the truth (*Id.* ¶ 7). She made, and continued to make, such false representations in an effort to induce Weilburg to make numerous special renovations to the House and rent it to her. (*Id.* ¶ 8).

Weilburg further alleges that he relied on Meredith's representations by making several improvements, at her insistence, which he would not otherwise have made. (*Id.* ¶ 9). Specifically, during April and May, 2011, as work on the ongoing renovation progressed,

Meredith demanded that Weilburg (1) install an automatic garage door with a remote opener; (2) install a bathtub with a glass door enclosure; (3) install porcelain floor tiles in both the bathroom and kitchen, in lieu of linoleum; (4) remove the carpet from the upstairs bedroom and stairs, and replace it with new carpet; (5) install all new appliances, which he did by purchasing a new dishwasher, a new range, and a new washer and dryer; (6) hire a carpenter that Meredith knew to repair a kitchen cupboard; and (7) hire an electrician that Meredith knew to upgrade some of the old two-pronged electrical outlets. (Answer ¶ 10, ECF No. 7). After Weilburg complied with each of these demands, Meredith then demanded not only that Weilburg install a patio in the back yard, which Weilburg actually agreed to do, but that Weilburg hire a patio installer she knew to do this work, (*Id.*). At this point, Weilburg refused, which angered Meredith, who then informed him, for the first time, that, contrary to her previous statements concerning her physical condition, she had "severe allergies" to dust and mold, and that she was prone to passing out from dust and mold. (*Id.*).

On May 10, 2011, Meredith emailed Weilburg to ask if, due to her respiratory problems, she could arrange for a company known as "Truckee Meadows Clean Air" to clean the House's heating vents at her own expense. (*Id.* ¶ 11). Weilburg agreed, and even offered to pay for the work. (*Id.*). On May 13, an employee from Truckee Meadows Clean Air arrived at the House to perform the service. Dressed unprofessionally and carrying only a "shop vac," the employee purported to conduct a mold test, and stated that based upon the results he would have to report Weilburg to the "Health Department," unless Weilburg agreed to purchase a more expensive "thorough system cleaning." (*Id.*). The employee also advised Weilburg that the oil-fired, forced-air heating system in the House would have to be replaced with a new heating system, and that the replacement would cost approximately $20,000. (*Id.*). Dissatisfied with the

employee's appearance and conduct, Weilburg paid him the agreed-upon $59.95, and sent him away before he could clean the heating vents. (*Id.* ¶ 12).

Weilburg then called Meredith, in the presence of his wife, and advised her that he was no longer willing to rent the House to her for the following reasons: (1) because Truckee Meadows Clean Air, the company that Meredith had insisted Weilburg use, had advised him that the oil-fired heating system in the House would have to be replaced at a cost of approximately $20,000, which he was unwilling to pay; (2) she had lied to him about being in excellent physical condition and having immaculate credit,[1] and she had deliberately waited until after he had incurred substantial costs in renovating the House before advising him that she supposedly suffered from "severe allergies"; and (3) he was unwilling to rent to her due to safety concerns related her admission that she was prone to losing consciousness if she inhaled dust or mold emitted from an oil-fired furnace. (*Id.* ¶ 13).

Shortly thereafter, Meredith filed her discrimination complaint with HUD. She then initiated the present action, alleging that Weilburg discriminated against her on the basis of disability in violation of the Fair Housing Act. Weilburg, who is seventy-one (71) years of age, disabled, and terminally ill, now brings four counterclaims, alleging that as a result of Meredith's misrepresentations, he has suffered monetary damages in excess of $10,000 and suffered severe emotional distress, which has greatly aggravated his terminal illness. (Countercl., ECF No. 7, at 14–20).  Weilburg seeks compensatory and punitive damages and an award of attorneys' fees and costs. (*Id.*).  Meredith now moves to dismiss these counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] Here, Weilburg indicates that he knew that Meredith had lied about having "immaculate credit" on, or prior to, May 13, 2011. This is inconsistent with his later assertion that that he " did not discover the said representations were false until August 30, 2011, when he ran a background repot on Ms. Meredith."  (Countercl. ¶ 18, ECF No. 7).

4

## II. LEGAL STANDARDS

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right

to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* A "plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### III.   ANALYSIS

**A. Intentional and Negligent Infliction of Emotional Distress**

The Court dismisses the claims for intentional emotional distress and negligent infliction of emotional distress as untimely. Pursuant to N.R.S. § 11.190(4)(e), an action to recover damages for injuries to a person caused by the wrongful act or neglect of another must be brought within two years. N.R.S. § 11.190(4)(e). Section 11.190(4)(e) encompasses all personal injuries whether intentional or negligent. *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989). Nevada law is clear that both intentional and negligent infliction of emotional distress have a two-year statute of limitations. *See Whitfield v. Pick Up Stix, Inx.*, No. 2:10-CV-99-ERC-PAL, 2010 WL 5186778, *3 (D. Nev. Dec. 10, 2010) (intentional and negligent infliction of emotional distress both subject to two-year statute of limitations under N.R.S. §11.190(4)(e)); *Patterson v. Grimm*, No. 2:10-CV-1292-JCM-RJJ, 2010 WL 4395419, *6 (D. Nev. Nov. 1, 2010) (same). Under Nevada law, the statute of limitations begins to run "when the wrong occurs and a party sustains injuries for which relief could be sought." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 780 (quoting *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990)). However, under Nevada's "discovery rule," when a plaintiff has not discovered her injury or cause of injury at the time of its occurrence, the statute of limitations is tolled "until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Petersen*, 792 P.2d at 20 (1990).

In the Counterclaim, Weilburg alleges that the conduct that caused him to suffer emotional distress occurred in or before May, 2011. (Countercl. ¶¶ 5-8, 21-22, 27-29, ECF No. 7). He alleges no facts concerning Meredith's conduct after that date, and he did not bring his

claims until June 20, 2013—over two years after the events that allegedly caused him to suffer severe emotional distress. (*Id.*).

Recognizing the need to toll the two-year statute of limitations, Weilburg attempts to invoke Nevada's discovery rule. (Opp'n to Mot. to Dismiss Countercl., ECF 10, at 22–24). He asserts that he "did not know until August 30, 2011, that Meredith did not have immaculate credit, that Meredith had a bankruptcy on her credit report, and that Meredith had one outstanding warrant against her on her credit report." (*Id.* at 22–23). However, this statement contradicts the allegations in his Answer, in which he explicitly states that on May 13, 2011, he refused to rent to Meredith, because, *inter alia*, "she had lied to him about having immaculate credit." (Answer ¶ 13, ECF No. 7, at 5–6). This allegation is an admission by Weilburg that he "knew" Meredith did not have "immaculate credit" as of May 13, 2011. His alleged discovery of specific entries on Meredith's credit report on August 30, 2011, several months later, does not toll the statute of limitations. As of May 13, 2011, Weilburg knew that Meredith had lied to him about her credit score, and therefore, that she had engaged in the allegedly extreme or outrageous conduct that allegedly caused his severe emotional distress. Weilburg's own pleadings foreclose his reliance on the discovery rule to toll the statute of limitations on these claims. Accordingly, these claims are dismissed with prejudice.

**B. Negligent Misrepresentation**

Meredith contends that Weilburg's negligent misrepresentation claim is subject to a two-year statute of limitations, and is therefore time-barred for the reasons stated above. This is not the case. This Court has held that under N.R.S. § 11.190 the applicable statute of limitations for negligent misrepresentation is "two or three years." *Hudnall v. Panola Cnty.*, No. 2:06CV0490-RCJ-LRL, 2007 WL 1521446 at *4 (D. Nev. May 22, 2007) (noting that under § 11.190(4)(e)

the limitations period for negligence claim is two years, and that under § 11.190(3)(d) the limitations period for fraud claim is three years). Where the action sounds in fraud, the applicable statute of limitations is three years, subject to the discovery rule. *Vari-Build, Inc. v. City of Reno*, 622 F. Supp. 97, 98 (D. Nev. 1985) (citing N.R.S. § 11.190(3)(d)). Because the present action sounds in fraud, the three-year statute of limitations applies, and the negligent misrepresentation claim is not untimely. Nonetheless, the Court dismisses the claim, with leave to amend, under the Rule 12(b)(6) standard.

Nevada has adopted the definition of negligent misrepresentation as found in the Restatement (Second) of Torts § 552, which states:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 449, 956 P.2d 1382, 1387 (1998). Even construing the factual allegations liberally, Weilburg has failed to sufficiently plead three of the elements necessary for a claim of negligent misrepresentation. First, he has failed to adequately plead that his alleged injury was caused by actual reliance on Meredith's representations.  His pleadings do not allege, with any degree of specificity, *how* her alleged misrepresentations caused him to make costly and allegedly unnecessary renovations.  Instead, he merely states that "he justifiably relied . . . upon [the] false representations by making numerous renovations to the [House], at the special instance [*sic*] and behest of Ms. Meredith, that he would not otherwise have made." (Answer ¶ 9, ECF No. 7). Such a conclusory and formulaic recitation of the elements of a claim is insufficient under the *Iqbal* standard. *See Iqbal*, 556 U.S. at 678.  Similarly, his vague allegation that Meredith continued to make additional false representations in an effort to induce

9

him to make the improvements is not pled with the specificity required by Fed. R. Civ. P. 9(b), and is therefore disregarded. *See Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). Moreover, allegations concerning Meredith's intent are not alone sufficient to support a plausible claim that his injury was caused by actual reliance.

Second, because Weilburg has failed to adequately plead that he actually relied on Meredith's statements, he has necessarily failed to adequately plead that his reliance was justifiable. He attempts to cure this by stating, in his opposition, that based on the allegations described above, the Court must infer that he was "well justified in making the unnecessary renovations to the [House] . . . because, based on Ms. Meredith's representations . . . [he] reasonably believed that [she] would make an exceptionally good long-term tenant," that she "consistently would pay her rent on time," and that she "would take good care of the [property]." (Opp'n to Mot. to Dismiss Countercl., ECF 10, at 14–15). These assertions, however, are not inferences to be reasonably deduced from the facts alleged in the pleadings; they are new facts concerning Weilburg's alleged beliefs at the time the renovations where made. Therefore, because these facts do not appear in the pleadings, the Court will not consider them at this time.

Meredith contends that Weilburg cannot, as a matter of law, adequately establish justifiable reliance because it was unreasonable for him to make renovations, at Meredith's request, without a formal agreement. (Mot. to Dismiss Countercl., ECF 9 at 9). However, except in extreme cases, whether reliance is reasonable is a question of fact. *Blanchard v. Blanchard*, 108 Nev. 908, 912, 839 P.2d 1320, 1322-23 (1992).Therefore, the Court declines to rule on the reasonability of Weilburg's reliance until the issue is properly pled.

Third, Weilburg has failed to adequately allege pecuniary loss. His pleadings allege no facts supporting an inference that his additional renovations to his own property resulted in lost value. Instead, he again injects new facts into his opposition, which describe how some of the special renovations will reduce the value of the House as a rental property. Because these allegations are not presented in his pleadings, the Court will not consider them at this time.

Citing various California authorities, Meredith contends that because Weilburg has retained the renovated premises, damages for Meredith's alleged misrepresentation are precluded as a matter of law. (Mot. to Dismiss Countercl., ECF 9, at 7). However, none of these cases directly supports this blanket proposition. Moreover, the Court is unable to find support for such a rule in the Nevada authorities. Therefore, the Court declines, at this stage, to find that Weilburg cannot establish damages as a matter of law. Accordingly, Weilburg is free to file an amended answer and counterclaim and include, if he so chooses, the additional facts that he has alleged in his opposition.

**C. Fraud/Intentional Misrepresentation**

In Nevada, the elements of false or fraudulent misrepresentation are: (1) A false representation made by the defendant; (2) defendant's knowledge or belief that his representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation. *Georgiou Studio, Inc. v. Boulevard Invest, LLC*, 663 F. Supp. 2d 973, 981 (D. Nev. 2009). For the reasons laid out above, the Court finds that Weilburg has failed to adequately plead causation by actual reliance or damages.  Therefore, the Court dismisses the claim for fraud/intentional misrepresentation, with leave to amend.

**D. Claim for Attorneys' Fees**

The Court finds that Weilburg's request for attorneys' fees is without merit at this time.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Motion to Dismiss Counterclaims (ECF No. 9) is GRANTED IN Full. The counterclaims for intentional infliction of emotional distress and negligent infliction of emotional distress are dismissed, without leave to amend. The counterclaims for negligent misrepresentation and intentional misrepresentation are dismissed, with leave to amend within twenty (20) days of the entry of this order.

IT IS SO ORDERED.

Dated: This 15th day of October, 2013.

_____
ROBERT C. JONES
United States District Judge