**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| NATALIE MEREDITH, Plaintiff, vs. DOUGLAS WEILBURG, Defendant. | 3:13-cv-00277-RCJ-WGC **ORDER** |

This case arises out of an alleged violation of the federal Fair Housing Act. On October 15, the Court granted in full Plaintiff's motion to dismiss Defendant's counterclaims. (Order, ECF No. 18). Specifically, the Court dismissed all four of Defendant's causes of action, granting leave to amend only the claims for negligent and intentional misrepresentation. (*Id.* at 12).

On November 4, 2013, the last day permitted by the Court's order, (*id.*), Defendant filed an amended answer and countercomplaint (the "AAC"). (*See* AAC, ECF No. 16). On November 25, he filed the pending motion for "Clerk's Entry of Default." (ECF No. 17).[1] On the same day, and apparently within the same hour, Plaintiff filed the pending motion to dismiss the AAC. (ECF No. 18). She then filed the pending motion for an extension of time to file her motion to dismiss. (ECF No. 19). Instead of substantively opposing the motion to dismiss, Defendant contends that "[i]f, for any reason, the Court should decide to grant [Plaintiff's] instant 'Motion to Extend Time,' then [Defendant] reserves the right to file his 'Opposition to [Plaintiff's] Motion to Dismiss First Amended Counterclaim' within fourteen (14) days of the entry of the Court's Order to that effect." (Opp'n Mot. Extend Time, ECF No. 23, at 2). Defendant has also moved to strike the motion to dismiss as untimely. (ECF No. 20). For the reasons stated herein, Plaintiff's motion to extend time is granted, and Defendant's pending motions are denied as moot. The Court declines to rule on the motion to dismiss at this stage and will instead require

---

[1] This document is not, in fact, a motion for entry of default, but instead a proposed document for the clerk to sign. The Clerk declined to sign the document.

Defendant to file a substantive opposition within ten (10) days of the entry of this order. Should Defendant fail to timely file, the Court will grant the motion for the reasons stated below.

## I.   Background

On May 28, 2013, Plaintiff Natalie Meredith ("Plaintiff" or "Meredith"), who has a hypersensitivity to mold, fungus, and other allergens, filed her complaint alleging that Defendant Douglas Weilburg ("Defendant" or "Weilburg") discriminated against her on the basis of disability in violation of the federal Fair Housing Act, when he refused to rent a single-family home at 521 G Street in Sparks, NV (the "House") to her. (Compl. ¶¶ 6–14, May 28, 2013, ECF No. 1). In August 2011, prior to the commencement of this action, Plaintiff filed an administrative complaint with the United States Department of Housing and Urban Development ("HUD"), alleging housing discrimination. After investigating the complaint, HUD made a reasonable cause determination and issued a charge of discrimination against Weilburg pursuant to 42 U.S.C. § 3610(g)(2)(A).  After Weilburg elected to have the charge resolved in federal court, the United States Attorney initiated an action against him in this Court pursuant to 42 U.S.C. § 3612(o)(1). This Court dismissed that action as untimely under 42 U.S.C. § 3612(o)(1). *United States v. Weilburg*, No. 3:12-CV-00571-RCJ-WGC, 2013 WL 1110902 at *3 (D. Nev. Mar. 12, 2013). Subsequently, Plaintiff instituted the present action in her own name pursuant to 42 U.S.C. § 3613. (*See* Compl., ECF No. 1). Defendant answered and filed a counterclaim alleging fraud/ intentional misrepresentation, negligent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress, arising out of the same events forming the basis for Meredith's housing discrimination claim. (Countercl., June 20, 2013, ECF No. 7, at14–20).

Specifically, Weilburg alleges the following: In March 2011, Meredith met with Weilburg, inspected the House, and expressed her desire to rent it. (*Id.* ¶¶ 1–4). Weilburg advised Meredith that the House was undergoing a renovation, but Meredith remained interested in renting it, and stated that she wished to monitor the progress. (Answer ¶ 7, June 20, 2013, ECF No. 7, at 3). During these discussions, Meredith falsely represented to Weilburg, in the presence of his wife, that her credit was immaculate and that she was in excellent physical condition. (Countercl. ¶ 5, ECF No. 7). Meredith, however, was not in excellent physical condition; she allegedly suffered from severe allergies. (*Id.* ¶ 6). Moreover, she did not have immaculate credit. Instead, her credit report listed a bankruptcy, two civil actions against her, and an outstanding warrant. (*Id.*). Further, Meredith knew that her statements were false and that Weilburg was unaware of the truth (*Id.* ¶ 7). She made, and continued to make, such false representations in an effort to induce Weilburg to make numerous special renovations to the House and rent it to her. (*Id.* ¶ 8).

Weilburg further alleges that he relied on Meredith's representations by making several improvements, at her insistence, which he would not otherwise have made. (*Id.* ¶ 9). Specifically, during April and May 2011, as work on the ongoing renovation progressed, Meredith demanded that Weilburg: (1) install an automatic garage door with a remote opener; (2) install a bathtub with a glass door enclosure; (3) install porcelain floor tiles in both the bathroom and kitchen, in lieu of linoleum; (4) remove the carpet from the upstairs bedroom and stairs, and replace it with new carpet; (5) install all new appliances, which he did by purchasing a new dishwasher, a new range, and a new washer and dryer; (6) hire a carpenter that Meredith knew to repair a kitchen cupboard; and (7) hire an electrician that Meredith knew to upgrade some of the old two-pronged electrical outlets. (Answer ¶ 10, ECF No. 7). After Weilburg complied with

each of these demands, Meredith then demanded not only that Weilburg install a patio in the back yard, which Weilburg actually agreed to do, but that Weilburg hire a patio installer she knew to do this work, (*Id.*). At this point, Weilburg refused, angering Meredith, who then informed him, for the first time, that, contrary to her previous statements concerning her physical condition, she had "severe allergies" to dust and mold, and that she was prone to passing out from dust and mold. (*Id.*).

On May 10, 2011, Meredith emailed Weilburg to ask if, due to her respiratory problems, she could arrange for a company known as "Truckee Meadows Clean Air" to clean the House's heating vents at her own expense. (*Id.* ¶ 11). Weilburg agreed, and even offered to pay for the work. (*Id.*). On May 13, an employee from Truckee Meadows Clean Air arrived at the House to perform the service. Dressed unprofessionally and carrying only a "shop vac," the employee purported to conduct a mold test, and stated that based upon the results, he would have to report Weilburg to the "Health Department," unless Weilburg agreed to purchase a more expensive "thorough system cleaning." (*Id.*). The employee also advised Weilburg that the oil-fired, forced-air heating system in the House would have to be replaced with a new heating system, and that the replacement would cost approximately $20,000. (*Id.*). Dissatisfied with the employee's appearance and conduct, Weilburg paid him the agreed-upon $59.95, and sent him away before he could clean the heating vents. (*Id.* ¶ 12).

Weilburg then called Meredith, in the presence of his wife, and advised her that he was no longer willing to rent the House to her for the following reasons: (1) because Truckee Meadows Clean Air, the company that Meredith had insisted Weilburg use, had advised him that the oil-fired heating system in the House would have to be replaced at a cost of approximately $20,000, which he was unwilling to pay; (2) she had lied to him about being in excellent physical

4

condition and having immaculate credit,[2] and she had deliberately waited until after he had incurred substantial costs in renovating the House before advising him that she supposedly suffered from "severe allergies"; and (3) he was unwilling to rent to her due to safety concerns related to her admission that she was prone to losing consciousness if she inhaled dust or mold emitted from an oil-fired furnace. (*Id.* ¶ 13).

Shortly thereafter, Meredith filed her discrimination complaint with HUD. She then initiated the present action, alleging that Weilburg discriminated against her on the basis of disability in violation of the Fair Housing Act. Weilburg, who is seventy-one years of age, disabled, and terminally ill, brought four counterclaims, alleging that as a result of Meredith's misrepresentations, he has suffered monetary damages in excess of $10,000 and suffered severe emotional distress, which has greatly aggravated his illness. (Countercl., ECF No. 7, at 14–20).

On October 15, 2013, the Court dismissed all four of Weilburg's counterclaims. The Court did not grant leave to amend the counterclaims for negligent and intentional infliction of emotional distress, but it did grant leave to amend, within twenty days of the entry of the order, to properly plead the claims for negligent misrepresentation and intentional misrepresentation. (Order, ECF No. 18). On November 4, 2013, Weilburg filed the AAC, (*see* ECF No. 16), and the pending motions now follow.

**II.  Motion to Extend Time (ECF No. 19)**

As a threshold matter, the Court grants Meredith's motion for a retroactive extension of time to file the pending motion to dismiss the AAC. Accordingly, Weilburg's motion for entry of default and motion to strike are denied as moot.

---

[2] Here, Weilburg indicates that he knew that Meredith had lied about having "immaculate credit" on, or prior to, May 13, 2011. This is inconsistent with his later assertion that he "did not discover the said representations were false until August 30, 2011, when he ran a background report on Ms. Meredith." (Countercl. ¶ 18, ECF No. 7).

Pursuant to Federal Rule of Civil Procedure 15(a)(3), "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." In contrast, Rule 12(a)(1)(B) requires a party to "serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim." Where, as here, a response is directed at an amended pleading, Rule 15(a)(3)'s 14-day deadline, rather than Rule 12's 21-day deadline, applies. *See, e.g.*, *Gen. Mills, Inc. v. Kraft Foods Global, Inc.*, 495 F.3d 1378, 1379 (Fed. Cir. 2007) (holding that Rule 15, not Rule 12, dictates the deadline for responding to an amended pleading unless there is time remaining to respond to the original pleading). Federal Rule of Civil Procedure 6(d) adds three days to filing periods where service is made through, among other methods, electronic means. Fed. R. Civ. Proc. 6(d) ("[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2) . . . (E) . . . 3 days are added after the period would otherwise expire . . . ."); Fed. R. Civ. Proc. 5(b)(2)(E) (allowing service "by electronic means if the person consented in writing—in which event service is complete upon transmission . . . ."). Therefore, by operation of Rule 6(d), Meredith had a total of seventeen days to respond to the AAC, and because she relied on Rule 12's 21-day deadline, her motion to dismiss was four days late.

Acknowledging her tardiness, Meredith seeks a retroactive extension of time. Under Federal Rule of Civil Procedure 6(b)(1), the Court may extend the time to file a motion where the moving party's delay was caused by excusable neglect. Courts consider the following four factors when determining whether a late filing was the result of excusable neglect: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable

control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P' ship*, 507 U.S. 380, 395 (1993)).

The Ninth Circuit has rejected the use of rigid per se rules in the excusable neglect determination. *Id.* at 859. "Rather, the decision whether to grant or deny an extension of time . . . should be entrusted to the discretion of the district court because the district court is in a better position . . . to evaluate factors such as whether the lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers . . . , and the likelihood of injustice if the [filing] [were] not allowed." *Id.* Thus, in *Pincay*, while the Ninth Circuit recognized that a lawyer's "failure to read an applicable rule is one of the least compelling excuses that can be offered," the court nonetheless upheld the district court's finding of excusable neglect where the movant misread the relevant rule and failed to file a timely appeal. *Id.* at 859–60.

Weilburg relies on hyperbole and *ad hominem* attacks on counsel in his attempt to exploit Meredith's mistaken reliance on Rule 12's 21-day deadline. (Opp'n Mot. Extend Time, ECF No. 23, 5–8). Such buncombe is unpersuasive, and a review of the *Pincay* factors demonstrates that the four-day extension is plainly warranted. With respect to the first and second factors, the Court rejects Weilburg's claim that "even one (1) day of delay by Ms. Meredith is highly prejudicial to Mr. Weilburg" because he is seventy-one years old and in poor health. (*Id.* at 9). To the extent that Weilburg actually believes that such a delay would prejudice his ability to give testimony in support of his counterclaims, the Court will consider a proper motion to expedite trial. With the availability of this less drastic remedy, the Court cannot conclude that the proposed extension would cause undue prejudice. Moreover, because the denial of the instant

motion would conclusively prohibit a defense to Weilburg's counterclaims, the likelihood of injustice drastically outweighs any actual prejudice in this case. *See Pincay*, 389 F.3d at 859 ("[T]he district court is in a better position than we are to evaluate factors such as . . . the likelihood of injustice if the [filing] [is] not allowed.).

With respect to factors three and four, while Meredith's counsel acknowledges that identifying the applicable filing deadline is within the reasonable control of the moving party, he contends that, in the present circumstances, the interplay between Rule 12 and Rule 15 is unclear. (Mot. Extend Time ECF No. 19, at 6). Specifically, counsel argues that the Court dismissed Weilburg's original countercomplaint in the entirety, meaning that "the amended answer reasserted the counterclaim[s] anew, starting from scratch," and therefore, the mistaken conclusion that Rule 12 applied was not unreasonable. The Court agrees. Furthermore, the record clearly indicates that the mistake was made in good faith. For these reasons, the Court finds that Meredith's four-day delay was the result of excusable neglect. Meredith's motion for a retroactive extension of time to file is granted, and Weilburg's pending motions are denied as moot.

### III. Motion to Dismiss Counterclaims (ECF No. 18)

Instead of opposing Meredith's motion to dismiss, Weilburg relies entirely on his failed campaign for a default judgment. (*See* Opp'n Mot. Extend Time, ECF No. 23, at 2). However, and citing no authority permitting him to do so, he purports to reserve a right to oppose the motion should the Court, as it has here, grant Meredith's motion to extend time. (*Id.*). This attempted reservation lacks any legal significance. By failing to file an opposition, Weilburg has effectively consented to the granting of the motion to dismiss. Local R. 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent

to the granting of the motion."). Nonetheless, because the Court is inclined to grant the motion on the merits, based on, among other things, Weilburg's apparent inability to establish damages as a matter of law, it will, in its discretion, grant Weilburg leave to file a substantive response within ten (10) days of the entry of this order. Meredith may file a reply within seven (7) days of the filing of Weilburg's response. No further extensions will be granted.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion to extend time (ECF No. 19) is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion for entry of default (ECF No. 17) is DENIED as moot.

IT IS FURTHER ORDERED that Defendant's motion to strike (ECF No. 20) is DENIED as moot.

IT IS FURTHER ORDERED that Defendant shall file a response to the pending motion to dismiss counterclaims (ECF No. 18) within ten (10) days of the entry of this order into the electronic docket. Plaintiff may file a reply within seven (7) days of the filing of Defendant's response. No further extensions will be granted.

IT IS SO ORDERED.

Dated: July 23, 2014

_____
ROBERT C. JONES
United States District Judge