## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| NATALIE MEREDITH,        ) <br>          Plaintiff,    ) <br>        vs.          ) <br> DOUGLAS WEILBURG,    ) <br>         Defendant.   ) | 3:13-cv-00277-RCJ-WGC <br><br> **ORDER** |

This case arises out of an alleged violation of the federal Fair Housing Act. On October 15, 2013, this Court granted Plaintiff's motion to dismiss Defendant's counterclaims. (Order, ECF No. 18). Specifically, the Court dismissed all four of Defendant's causes of action, granting leave to amend only the claims for negligent and intentional misrepresentation. (*Id.* at 12). Defendant has filed an amended answer and countercomplaint (the "AAC"), (ECF No. 16), and Plaintiff has again moved to dismiss. (ECF No. 18). For the reasons stated herein, the Court now denies Plaintiff's motion.

## I.   FACTS AND PROCEDURAL HISTORY

On May 28, 2013, Plaintiff Natalie Meredith ("Plaintiff" or "Meredith"), who has a hypersensitivity to mold, fungus, and other allergens, filed her complaint alleging that Defendant Douglas Weilburg ("Defendant" or "Weilburg") discriminated against her on the basis of disability in violation of the federal Fair Housing Act, when he refused to rent a single-family home at 521 G Street in Sparks, NV (the "House") to her. (Compl. ¶¶ 6–14, May 28, 2013, ECF No. 1). In August 2011, prior to the commencement of this action, Plaintiff filed an administrative complaint with the United States Department of Housing and Urban Development ("HUD"), alleging housing discrimination. After investigating the complaint, HUD made a reasonable cause determination and issued a charge of discrimination against Weilburg pursuant

to 42 U.S.C. § 3610(g)(2)(A). After Weilburg elected to have the charge resolved in federal court, the United States Attorney initiated an action against him in this Court pursuant to 42 U.S.C. § 3612(o)(1). This Court dismissed that action as untimely under 42 U.S.C. § 3612(o)(1). *United States v. Weilburg*, No. 3:12-CV-00571-RCJ-WGC, 2013 WL 1110902 at *3 (D. Nev. Mar. 12, 2013). Subsequently, Plaintiff instituted the present action in her own name pursuant to 42 U.S.C. § 3613. (*See* Compl., ECF No. 1). Defendant answered and filed a counterclaim alleging fraud/ intentional misrepresentation, negligent misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress, arising out of the same events forming the basis for Meredith's housing discrimination claim. (Countercl., June 20, 2013, ECF No. 7, at14–20).

Specifically, Weilburg alleges the following: In March 2011, Meredith met with Weilburg, inspected the House, and expressed her desire to rent it. (*Id.* ¶¶ 1–4). Weilburg advised Meredith that the House was undergoing a renovation, but Meredith remained interested in renting it, and stated that she wished to monitor the progress. (Answer ¶ 7, June 20, 2013, ECF No. 7, at 3). During these discussions, Meredith falsely represented to Weilburg, in the presence of his wife, that her credit was immaculate and that she was in excellent physical condition. (Countercl. ¶ 5, ECF No. 7). Meredith, however, was not in excellent physical condition; she allegedly suffered from severe allergies. (*Id.* ¶ 6). Moreover, she did not have immaculate credit. Instead, her credit report listed a bankruptcy, two civil actions against her, and an outstanding warrant. (*Id.*). Further, Meredith knew that her statements were false and that Weilburg was unaware of the truth (*Id.* ¶ 7). She made, and continued to make, such false representations in an effort to induce Weilburg to make numerous special renovations to the House and rent it to her. (*Id.* ¶ 8).

Weilburg further alleges that he relied on Meredith's representations by making several improvements, at her insistence, which he would not otherwise have made. (*Id.* ¶ 9). Specifically, during April and May 2011, as work on the ongoing renovation progressed, Meredith demanded that Weilburg: (1) install an automatic garage door with a remote opener; (2) install a bathtub with a glass door enclosure; (3) install porcelain floor tiles in both the bathroom and kitchen, in lieu of linoleum; (4) remove the carpet from the upstairs bedroom and stairs, and replace it with new carpet; (5) install all new appliances, which he did by purchasing a new dishwasher, a new range, and a new washer and dryer; (6) hire a carpenter that Meredith knew to repair a kitchen cupboard; and (7) hire an electrician that Meredith knew to upgrade some of the old two-pronged electrical outlets. (AAC ¶ 12, ECF No. 16, at 16). After Weilburg complied with each of these demands, Meredith then demanded not only that Weilburg install a patio in the back yard, which Weilburg actually agreed to do, but that Weilburg hire a patio installer she knew to do this work, (*Id.*). At this point, Weilburg refused, angering Meredith, who then informed him, for the first time, that, contrary to her previous statements concerning her physical condition, she had "severe allergies" to dust and mold, and that she was prone to passing out from dust and mold. (*Id.*).

On May 10, 2011, Meredith emailed Weilburg to ask if, due to her respiratory problems, she could arrange for a company known as "Truckee Meadows Clean Air" to clean the House's heating vents at her own expense. (*Id.* ¶ 11). Weilburg agreed, and even offered to pay for the work. (*Id.*). On May 13, an employee from Truckee Meadows Clean Air arrived at the House to perform the service. Dressed unprofessionally and carrying only a "shop vac," the employee purported to conduct a mold test, and stated that based upon the results, he would have to report Weilburg to the "Health Department," unless Weilburg agreed to purchase a more expensive

"thorough system cleaning." (*Id.*). The employee also advised Weilburg that the oil-fired, forced-air heating system in the House would have to be replaced with a new heating system, and that the replacement would cost approximately $20,000. (*Id.*). Dissatisfied with the employee's appearance and conduct, Weilburg paid him the agreed-upon $59.95, and sent him away before he could clean the heating vents. (*Id.* ¶ 12).

Weilburg then called Meredith, in the presence of his wife, and advised her that he was no longer willing to rent the House to her for the following reasons: (1) because Truckee Meadows Clean Air, the company that Meredith had insisted Weilburg use, had advised him that the oil-fired heating system in the House would have to be replaced at a cost of approximately $20,000, which he was unwilling to pay; (2) she had lied to him about being in excellent physical condition and having immaculate credit,[1] and she had deliberately waited until after he had incurred substantial costs in renovating the House before advising him that she supposedly suffered from "severe allergies"; and (3) he was unwilling to rent to her due to safety concerns related to her admission that she was prone to losing consciousness if she inhaled dust or mold emitted from an oil-fired furnace. (*Id.* ¶ 13).

Shortly thereafter, Meredith filed her discrimination complaint with HUD. She then initiated the present action, alleging that Weilburg discriminated against her on the basis of disability in violation of the Fair Housing Act. Weilburg, who is seventy-one years of age, disabled, and terminally ill, brought four counterclaims, alleging that as a result of Meredith's misrepresentations, he has suffered monetary damages in excess of $10,000 and suffered severe emotional distress, which has greatly aggravated his illness. (Countercl., ECF No. 7, at 14–20).

---

[1] Here, Weilburg indicates that he knew that Meredith had lied about having "immaculate credit" on, or prior to, May 13, 2011. This is inconsistent with his later assertion that he "did not discover the said representations were false until August 30, 2011, when he ran a background report on Ms. Meredith." (Countercl. ¶ 18, ECF No. 7).

On October 15, 2013, the Court dismissed all four of Weilburg's counterclaims. The Court did not grant leave to amend the counterclaims for negligent and intentional infliction of emotional distress, but it did grant leave to amend the claims for negligent misrepresentation and intentional misrepresentation. On November 4, 2013, Weilburg filed the AAC, (*see* ECF No. 16), and on July 23, 2014, the Court granted a retroactive extension of time to file the pending motion to dismiss, (Order, ECF No. 27). The Court further ordered Weilburg to file a substantive response to the motion within ten days. (*Id.*). Specifically, the Court explained:

> By failing to file an opposition, Weilburg has effectively consented to the granting of the motion to dismiss. Local R. 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion."). Nonetheless, because *the Court is inclined to grant the motion on the merits, based on, among other things, Weilburg's apparent inability to establish damages as a matter of law*, it will, in its discretion, grant Weilburg leave to file a substantive response within ten (10) days of the entry of this order. Meredith may file a reply within seven (7) days of the filing of Weilburg's response. No further extensions will be granted.

(*Id.* (emphasis added)). Weilburg timely filed a response, (ECF No. 28), and Meredith timely filed a reply, (ECF No. 29). The Court now considers the pending motion.

## II.   LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should look only to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the

complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass Rule 12(b)(6) muster, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

*& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* A "plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

## III.   ANALYSIS

The Court concludes that Weilburg has sufficiently alleged damages to allow his counterclaims to proceed. Both of Weilburg's remaining counterclaims require a showing of cognizable damages. *See Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (Negligent misrepresentation requires a "pecuniary loss caused by [the plaintiff's] justifiable reliance," and fraudulent misrepresentation requires "damage to the plaintiff as a result of relying

on the misrepresentation."). Accordingly, Weilburg's counterclaim must provide enough facts that a jury could find that Meredith's alleged misrepresentations caused him pecuniary loss or some other harm.

The question the Court must decide is whether a jury could find that a landlord who makes improvements in reliance on a prospective tenant's alleged misrepresentations, which he would not have otherwise made, and which will allegedly increase the cost of maintaining the premises as a rental property, is entitled to any measure of damages when he declines to enter the contemplated lease and retains ownership of the improved premises. While the Nevada authorities do not address this precise question, this Court believes that the Nevada Supreme Court would follow the Restatement (Second) of Torts (1977) (the "Restatement") and hold that, under such circumstances, damages may be available.[2]

The Nevada Supreme Court has consistently relied on the Restatement while defining the misrepresentation causes of action.[3] With respect to the appropriate measure of damages in this case, the Restatement provides the following:

> (1) The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including

---

[2] "When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996).

[3] *See, e.g.*, *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013) (quoting Restatement § 552 cmt. a) ("Section 552 provides that in situations where only pecuniary loss results, liability for negligent misrepresentation is not based on general duty rules, but instead, on a "'restricted rule of liability.'"); *Goodrich & Pennington Mortgage Fund, Inc. v. J.R. Woolard, Inc.*, 101 P.3d 792, 796–97 (Nev. 2004) (quoting Restatement § 549 cmt. d) (defining "consequential damages" in the misrepresentation context); *Bill Stremmel Motors, Inc. v. First Nat. Bank of Nevada*, 575 P.2d 938, 940 (Nev. 1978) (quoting Restatement § 552) (adopting the Restatement's definition of the tort of negligent misrepresentation).

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation.

Restatement (Second) of Torts § 549 (1977). Comment *b* to section 549 clarifies how this rule operates where the claimant retains the thing(s) acquired as a result of the misrepresentation:

[T]he recipient of a fraudulent misrepresentation is entitled to recover from its maker in all cases the actual out-of-pocket loss which, because of its falsity, he sustains through his action or inaction in reliance on it. If, notwithstanding the falsity of the representation, the thing that the plaintiff acquires through the fraudulent transaction is of equal or greater value than the price paid and he has suffered no harm through using it in reliance upon its being as represented, he has suffered no loss and can recover nothing . . . .

*Id.* § 549 cmt. b. Therefore, where a landlord retains improvements purchased and installed as the result of a prospective tenant's alleged misrepresentation and does not allege that they are of lesser value than the price paid or that reliance resulted in some other concrete, measurable pecuniary injury, "he has suffered no loss and can recover nothing." (*Id.*).  On the other hand, if the landlord retains those improvements and they carry with them additional financial obligations that he otherwise would not have incurred but for his reliance on the prospective tenant's alleged misrepresentation, then the question of actual damages is for the finder of fact to decide.[4]

      Here, Weilburg does not allege that the improvements he purchased and installed are worth less than the price he paid or even that the market value of the House decreased as a result of the renovations. Instead, he alleges only that he "lost money" on the House "because [the] renovations will make [it] more expensive and difficult to maintain as a rental property in the future." (AAC, ECF No. 16, at 18 (emphasis in the original)).

---

[4] *See Quintero v. McDonald*, 14 P.3d 522, 523 (Nev. 2000) (stating that the jury is permitted wide latitude in determining damages and implying that it is the jury's responsibility to make findings of fact regarding damages).

Indeed, Weilburg does not allege that the House is objectively less valuable as a result of the improvements or that Meredith caused him to overpay for the renovations. Thus, Weilburg's counterclaim can survive dismissal only if he alleges some other harm as a result of Meredith's alleged misrepresentation.

Weilburg claims that he has suffered damages in excess of $10,000 because "the renovations actually devalue the [House] as a rental property," (AAC, ECF No. 16, at 19). At bottom, Weilburg asserts that because he has: (1) installed an automatic garage door opener, a bathtub with a glass door enclosure, porcelain floor tiles, new carpet, and new appliances; (2) repaired a cupboard; and (3) upgraded some electrical outlets, (AAC ¶ 12, ECF No. 16, at 16), he is sure to suffer increased maintenance costs in the amounts claimed. These retained improvements may subject Weilburg to some expenses that he would not have incurred had he not relied on Meredith's representations. While Weilburg has the ultimate burden of proving his future damages with reasonable certainty, *see Knier v. Azores Const. Co.*, 368 P.2d 673, 675 (Nev. 1962), the allegations in the counterclaim are sufficient to persuade the Court that Weilburg should have the opportunity to make his arguments to a jury.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion to dismiss (ECF No. 18) is DENIED.

IT IS SO ORDERED.

Dated:  This 29th day of September, 2014.

_____
ROBERT C. JONES
United States District Judge