UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NATALIE MEREDITH, | |
| Plaintiff, | 3:13-cv-00277-RCJ-WGC |
| vs. | **ORDER** |
| DOUGLAS WEILBURG, | |
| Defendant. | |

This case arises from Defendant's alleged violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq*. Pending before the Court are Defendant's Motions in Limine (ECF Nos. 51, 52). For the reasons contained herein, the first Motion is GRANTED, and the second Motion is GRANTED in part and DENIED in part.

**I.      FACTS AND PROCEDURAL HISTORY**

Defendant Weilburg owns a rental property located at 521 G Street in Sparks, Nevada ("the Property"). In February 2011, Plaintiff contacted Defendant regarding the possibility of leasing the Property. On March 10, 2011, Plaintiff toured the Property and determined that she was interested in renting it once ongoing renovations were completed. During the renovation process, Plaintiff gave input as to what she would like done in the home and Defendant complied with a number of those requests including the installation of an automatic garage door, a glass shower door, and new appliances.

1

In May 2011, Plaintiff contacted Defendant to request that the air ducts of the home be cleaned due to her mold and dust allergies, and suggested that a company called Truckee Meadows Air Quality ("TMAQ") be hired to perform the service. Defendant agreed. On May 13, 2011, a TMAQ affiliate met Defendant at the Property to conduct the cleaning and perform certain mold tests. It is alleged that the tests indicated that mold was present in the duct system and traceable to the oil-burning furnace. The TMAQ affiliate allegedly then informed Defendant that the furnace would have to be replaced or Defendant would be reported to the Health Department. Defendant declined to replace the furnace due to the expense, and he informed Plaintiff that he would no longer rent the Property to her. Defendant also claimed that Plaintiff and TMAQ were engaged in some sort of scam on the owners of rental properties and reported his beliefs to the Sparks Police Department.

On August 11, 2011, Plaintiff filed a formal complaint with the U.S. Department of Housing and Urban Development ("HUD") alleging that Defendant had discriminated against based on her disability of severe allergies. HUD conducted an investigation and determined that there was reasonable cause to believe Defendant had violated the FHA, issuing a charge of discrimination on August 28, 2012. On May 28, 2013, Plaintiff filed the instant case asserting numerous violations of the FHA.

**II.     LEGAL STANDARD**

"A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury." *United States v. Whittemore*, 944 F. Supp. 2d 1003, 1006 (D. Nev. 2013) (citation omitted). The motion is "a request for the court's guidance concerning an evidentiary issue." *Goodman v. Las Vegas Metro. Police Dep't*, 963 F. Supp. 2d 1036, 1046 (D. Nev. 2013) (citing *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999)). Motions in limine are not to be

1  used as a means for resolving factual disputes or to weigh the evidence, and evidence should not
2  be excluded prior to trial "unless 'the evidence is inadmissible on all potential grounds.'" *Id.*
3  (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).

4  A court's ruling on a motion in limine is not binding on the trial judge, and such rulings
5  may be changed during the course of trial. *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000);
6  *Luce v. United States*, 469 U.S. 38, 41 (1984).  Indeed, "[d]enial of a motion in limine does not
7  necessarily mean that all evidence contemplated by the motion will be admitted to trial.  Denial
8  merely means that without the context of trial, the court is unable to determine whether the
9  evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

10 **III.    DISCUSSION**

11 **A. Motion in Limine No. 1**

12 Defendant's first Motion requests that the Court preclude Plaintiff from offering any
13 evidence that Defendant violated 42 U.S.C. § 3617 or that Defendant attempted to intimidate
14 Plaintiff's counsel.  In essence, Defendant asks that the Court to preclude Plaintiff from arguing
15 retaliation.  The Court agrees with Defendant that there is no retaliation claim alleged in the
16 Complaint such that evidence of retaliation would be relevant at trial.  The facts alleged in the
17 Complaint do not indicate that Plaintiff was ever retaliated against for exercising a right under
18 the FHA; rather, the allegations speak only of Defendant's discrimination by refusing to rent the
19 Property to Plaintiff due to her asserted disability.

20 Furthermore, the Complaint's discussion of the HUD administrative process gives no
21 indication that Plaintiff presented a retaliation claim in her administrative charge against
22 Defendant.  Instead, it appears as though HUD's investigation focused on whether Defendant
23 had discriminated against Plaintiff based on her disability, not whether there was subsequent
24

retaliation based on Plaintiff's exercising her rights under the FHA.  The Court, therefore, finds that Plaintiff has not exhausted her administrative remedies as to the issue of retaliation.

Plaintiff requests that the Court give her leave to supplement the Complaint so that a retaliation claim with corresponding allegations might be added.  The Court denies this request.  Trial is in a few short days and it would be prejudicial to Defendant to allow Plaintiff to amend the Complaint at this late hour to include a claim that could have been added months ago with leave from the Court.  The Motion is granted, and Plaintiff is precluded from offering any evidence that Defendant retaliated against her or that he has harassed Plaintiff's counsel.

**B.  Motion in Limine No. 2**

The second Motion requests that the Court preclude Plaintiff from introducing evidence that she allegedly incurred economic damages in excess of one month.  Defendant argues that Plaintiff could not have incurred more than a single month's worth of damages because the proposed lease was an oral month-to-month arrangement.  Defendant contends that Plaintiff's estimations of seven months of incurred storage fees for her personal property, forty-one months of additional rental expense, and three-and-a-half years of extra utility costs are all unrealistic and should be excluded due to the nature of the would-be tenancy.

As an initial matter, the Court does not find the contemplated length of the lease to be relevant whatsoever.  The parties never actually entered into a lease agreement due to Defendant's alleged discrimination.  Thus, the fact that the proposed tenancy was month-to-month has no bearing on the amount of damages Plaintiff may recover should she prevail on her claims.

The relevant question, and the burden of which Plaintiff must carry at trial, is what damages she can prove by a preponderance of the evidence were actually caused by Defendant's

1  alleged discriminatory acts.  Plaintiff will have to persuade the jury that Defendant's actions
2  caused her to pay extra rent costs for a certain amount of time; how much time, however, is again
3  a question of causation, and it will be up to the Plaintiff to convince the jury accordingly.
4  Likewise, the amount of storage costs Plaintiff incurred poses a question of causation.  It makes
5  sense that Plaintiff may have incurred one or two months of storage costs if she was actively
6  seeking another residence to rent.  But if Plaintiff can persuade the jury that her reasonable
7  efforts did not produce an acceptable rental for longer than one or two months, causing her
8  additional storage fees, then she can recover those additional fees.  It all comes down to the
9  amount of damages Plaintiff can prove by a preponderance of the evidence were caused by
10 Defendant's alleged conduct.

11     However, the Court is not willing to let Plaintiff recover the supposed additional utility
12 expenses.  Plaintiff never actually lived in the Property and therefore can only guess or estimate
13 what her utility costs would have been.  And the question of causation as to the extra utility costs
14 is even more difficult than the causation issue as to the other economic damages simply because
15 the amount one pays in utilities can vary so much from month to month for a variety of different
16 reasons.  Those expenses are just too far removed from Defendant's alleged conduct to be
17 relevant at this trial.  Plaintiff is thus precluded from offering evidence or claiming damages for
18 extra utility costs.  The Motion, therefore, is granted in part and denied in part.
19 ///
20 ///
21 ///
22 ///
23 ///
24

5

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant's first Motion in Limine (ECF No. 51) is GRANTED.

IT IS FURTHER ORDERED that Defendant's second Motion in Limine (ECF No. 52) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated:  May 28, 2015

_____
ROBERT C. JONES
United States District Judge